Ed Smith Good morning, Your Honor. Ed Smith Good morning. Ed Smith I'm here today representing Milinda Killian in the Social Security Disability claim. We feel like the judge, in this case, committed legal error in applying res judicata in the case where there were changed circumstances. And getting right to the issue of where we feel like there was legal error, our first position is there was a large weight gain, which is important in this case, because obesity, according to Social Security, is an important factor, whether it's just obesity alone. And then the regulations and the rulings both state that when combined with arthritis, they can create more functional limitations and pain than if you just had the arthritis alone. She was like 5'2", close to 300 pounds or something, right? She is now. At the particular time. 292. Yeah. She wasn't that weight at her date last insured, though. And at her date last insured, which was December of 1998, her next weigh-in was 243 pounds, which was February 2, 1999. She did have a weigh-in of 230-some pounds in December of 1998 before her date last insured. So your argument is what? That there should have been consideration of post-insured date to inform whether there was changed circumstances during the insured period? Yes. At her first ALJ hearing, she weighed 210 pounds. And the ALJ at the first hearing says, I have reviewed the listing of impairment for obesity, and I find she doesn't meet it because her weight is too low, 210 pounds. True, it was. The second ALJ, though, five years later, he doesn't say he evaluates the obesity listing, which at the time he held the hearing had been deleted, but it was still in effect at the time of her date last insured. It was deleted in 1999, and her date last insured was in 1998. She met the listing, the old listing, where she would be presumptively disabled by the time of her date last insured. Now, whether or not that should be retroactively applied, that deletion of the listing, I think is irrelevant, because either way the judge committed legal error in this case. He either should have said, yes, she met the listing for obesity and granted her benefits. The only reason the first ALJ didn't do it, he said, was because her weight was too low. Or, in the alternative, he should have considered the new Social Security rulings on obesity, 0201P, and the new listing, muscle skeletal listings, that incorporated new language in them about obesity and arthritis. Both of those things had changed from when the first ALJ gave his decision. ALJ Little, the first decision, he said he reviewed listing 1.05C. 1.05C was no longer in effect when the second ALJ issued his decision. There was a completely new muscle skeletal listings that had been completely rewritten, adding language specifically concerning obesity and the effects of obesity. He didn't mention that at all in his decision. He didn't mention that he was considering any listings, the new listings or any old listings. He just basically, what the second ALJ said is, I adopt the first ALJ decisions. I'm not going to give you an individual review. I'm not going to really determine what your case is now. I'm just going to find the same thing the ALJ did five years ago when you were 30 pounds lighter and you didn't meet the listing for obesity. We feel there was change circumstances in the ALJ committed legal error in not considering. He didn't mention her weight gain. It was in the record that there was a large weight gain. That type of weight gain is significant because she went from non-listing level to listing level with that weight gain. I would point out there's some discrepancy in her height. The first ALJ in his decision said she was 5'4", but we have no medical records because the ALJ didn't omit the medical records from the prior hearing into the file, so we don't have any background for that. We do have the Social Security's own state agency physicians who reviewed the file in this record. In this case, it says she's 5'2". We do have that in the medical records section of the brief, that she's 5'2". He didn't mention that change circumstances either, the ALJ. He made no findings as to what her height was, to what her weight was, or evaluation of how that affected her claim, which is all required under the rulings and the regulations. Another important part of change circumstances, I think in this case, is the activities of daily living. In the first case, ALJ Little specifically made findings regarding her activities of daily living. In the record at page 30, he said the claimant states that she takes care of her family, she shops, she does the laundry, she does her housework. The ALJ in the second case made no findings regarding what her activities of daily living were, but there was quite a difference. She testified at her hearing. At the first instance, I gather she was 210 pounds. 210 pounds at the first instance. And then she was 240-some pounds the second time around. The second time, she was 243 pounds. By the time she had the hearing, she was close to 300 pounds. But her hearing was in 2003. Her date last insured was back in 1998. So that's why I'm saying that I'm using the 240 pound because that was her date last insured. Now the ALJ talks about the evidence up through December 31, 1998, and summarizes it. And then he says other new evidence shows that the claimant was assessed in late 2001 for right-arm numbness and so on. So he did go into some post-insured evidence. Yes, he did. Your argument is that what should he have done with respect to the post-December 31, 1998 evidence? He should have made an analysis of whether or not he could infer when that condition worsened because in 2001, her doctor sent her for new MRIs. Her medical records with her doctor stated she didn't have insurance, and so she couldn't get testing. And then she got some insurance, and she was able to get some testing. And she got some MRIs. And they showed degenerative disc changes and degenerative diseases at multiple levels in her spine. And that was in 2001. Well, then shortly after that, she was referred to specialists, and she had another back surgery in 2002. This was her second back surgery. So in 2002, she had her second back surgery. Well, he said that's too remote. Apparently, I'm assuming that's what he's saying, that this is too remote from her date last insured, 2001-2002. Well, her treating doctor said that in 1998 at her date last insured that if she had a job, she would miss four or more days of work per month. The vocational expert said with that limitation, she can't work. Her treating doctor said in 1998 that she would need to lay down during the day because to take off the pressure from her obesity and her arthritis, and that she would, and the vocational expert said that with that need to lay down, she could not work at any job, past work or other work. Okay. Why don't you save the rest of your time for rebuttal, and we'll hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is David Bloom, and I represent the Commissioner of Social Security. Plaintiff's case fails because she hasn't shown that her condition worsened significantly before her date last insured in 1998, December 31, 1998. Her weight on 12-18-98 was actually 234 pounds. That's at page 194 of the record. But the listing argument for obesity is kind of a red herring because the commissioner deleted that listing in October 1999 and does not apply it to cases adjudicated after that date. The commissioner has since focused on the functional limitations that obesity causes, and plaintiff's problem here is that she can't point to anything in the medical record indicating that she became unable to do sedentary work in 1998. Well, is that true? She's pointed to it. I mean, there's some post-1998 evidence that the ALJ talks about. Well, that's true. I guess that's a more accurate statement. She relies heavily on the retrospective opinion from her treating doctor, Dr. Swofford. And it's not that retrospective opinions are discredited per se. They can be useful. But this Court has held several times that an ALJ may discredit such an opinion if the contemporaneous medical evidence from the relevant period doesn't support it. That's exactly what we have here. In 1998, she went to the doctor only occasionally, and more often for medication refills than for treatment for any impairment related to her back, her weight, or anything else. Did the ALJ have an obligation, given the showing of her condition post-date of last insured, to call a medical expert to help him with the interpolation problem to determine retrospectively whether Dr. Swofford's opinion was legitimate or credible? I'd say no. I know a plaintiff has cited cases indicating the need for medical expertise to infer an onset date of disability. The distinguishing facts here are that the worsening was so much after the date last insured that it doesn't bring that into play. Also, the condition in those cases, you need an onset, you need medical expertise to infer an onset when disability itself, when the onset of disability itself is unclear. But here, there's no indication that she was anything close to disabled in 1998. In fact, I direct your attention to page 197 of the record. In May 1999, five months after her date last insured, there's an indication that she was working with her hands in water and was a housekeeper. It's true that that notation in the record doesn't indicate how many hours a day she was doing that or how many hours a week, but it is some indication supporting the ALJ's finding that she was able to do sedentary work the year before, 1998. I'm sorry. What was the site? What page is that? Page 197. It's kind of a long chart note, but somewhere in the middle there it says that her fingers have been dry and cracked. She works with her hands in water and is a housekeeper. And further down, the nurse practitioner diagnoses the condition as dermatitis of the hands, secondary to frequent soaking in water. So, I mean, she's claiming that she was unable to do even sedentary work in 1998, and yet in May 1999 there's some indication that she was doing at least some chore work as a housekeeper. And there is some medical expertise in the record to back up what the ALJ said, although admittedly he didn't cite it. A state agency reviewing physician, Dr. Charles Wolfe, reviewed the record that he had before him at that time, which did show some worsening of her condition in 2001, and at pages 136 through 40, Dr. Wolfe considered her back impairment and her obesity, and he was aware of her weight gain by that time, and he nonetheless concluded that as of 12-31-98 she was able to do sedentary work at that time. So you don't really need additional development of this record to conclude that Plaintiff was able to do sedentary work in 1998. Furthermore, because Mr. Tree was the counsel for Plaintiff at the administrative level, he had the opportunity to request back then that the ALJ develop the record further. He didn't do so. In fact, the ALJ kept the record open for 30 days after the hearing for Mr. Tree to submit additional medical records from Dr. Swofford, contemporaneous to 1997-1998. He did that, but he didn't raise any argument specifically that the ALJ should obtain a medical expert for either her physical or mental impairments. These arguments have been brought up or at least developed more fully in district and court and before this court, but he had the opportunity to pursue those arguments then. So Plaintiff's problem is that she loses either with or without res judicata. With res judicata, the presumption is that she continued to be able to do sedentary work. And even if you evaluate the sequential you go through the sequential evaluation process another time, she loses again here because Dr. Wolfe indicated she was able to do sedentary work in 1998 at her age. I'm sorry, where was Dr. Wolfe? What's the site on that? Pages 136 through 140. So given her age in her mid-30s, she was disabled either under the medical vocational guidelines or via the vocational expert testimony because a vocational expert testified at the new hearing that given a sedentary residual functional capacity, such a person could perform several unskilled sedentary jobs. So there's really no point in sending this case back for further development because at step five she was not disabled one way or another. I'm having trouble with the – well, show me what you're referring to. That's dated September of 2002. Right. So you're saying on 137 because he checks those boxes, that applies to the date of the pre-December of 98? If you look at page 136, on the left it lists the diagnoses that he considered, obesity and back pain, and then on the right at the top there it says assessment is for, and he checked the box, date last insured, 12-98. So that means that his opinion was as of that date she could do sedentary work. Is that what that means? That's what I was having trouble finding. He signs it in 02, right? Right. Okay, so does that mean that's just not a statement as to the – a factual statement as to when she was last insured? No. It says – it's kind of blackened out there, but above that it says the record assessment is for date last insured. Date last insured. Okay. That's the purpose of his opinion. All right. So unless the panel has any additional questions, that's all I have. Okay. Thank you very much. Thank you, Your Honor. Any other questions? Your Honor, in regards to that report from Dr. Wolfe, the ALJ in the second case, he didn't cite to this report at all, didn't consider it. Furthermore, this report was done based upon res judicata. They just incorporated ALJ's Littles' 1993 RFC, and that's reflected on page 137 of the report. Explanation of exertional limitations at the bottom of the page says, please review initial file for information of impairments from 394 to 1298. Also review ALJ Littles' decision for sedentary work 325-94. This is a Chavez case or issue. In other words, res judicata applies. Littles said, sedentary work, check sedentary work. The person that prepared this form said, doctor, check sedentary work. That's what Littles said back previously in the prior decision. The initial decision for insufficient at date last insured is incorrect. The counsel for the commissioner had pointed out that I represented this claimant at the administrative level and that I should have perhaps asked for a medical expert to infer the onset date. We didn't anticipate the ALJ denying this case. We had come forward with positive evidence from her treating physician that said she was disabled and could not work at her date last insured. The administrative law judge did have that evidence before him, and so we anticipated that we had carried our burden of proof in this case. This is a case where the prior ALJ had said she had back surgery. She had significant spine impairments. She weighed 210 pounds, and because of that, she couldn't do very heavy work. She couldn't do heavy work. She couldn't do medium work. She couldn't do light work. She couldn't do sedentary work. Her condition gets worse. She gains weight. She makes a listing level. I think that's significant because the only thing that the commissioner can point to is that there's not objective evidence to verify what her treating doctor says, that is that she would miss work regularly and that she needs to lay down during the day. For years, Social Security said you're presumptively disabled at this height and this weight with these arthritis problems in your spine. That's showing that there's objective evidence in this case that could lead to a treating doctor giving such opinions that he did. It was improper to reject those opinions from the treating doctor. That's it. Okay, we have your overtime. Thank you. Thank you very much. We appreciate the argument. The case is submitted.
judges: Fisher, Tallman, Ezra